UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL J. WELSH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cv-01542-MG-TWP |
| ) | |
| PACIFIC PREMIERE TRUST, A DIVISION OF ) | |
| PACIFIC PREMIERE BANK, F/K/A PENSCO ) | |
| TRUST COMPANY, A WHOLLY OWNED ) | |
| SUBSIDIARY OF OPUS BANK, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Defendants' have filed a Motion to Compel Arbitration and Stay Proceedings, [Filing No. 6], which is now fully briefed and ripe for decision, and Motion to Stay Discovery, [Filing No. 14]. Defendants have further filed a Notice of No Response and Request for Ruling regarding their Motion to Stay. [Filing No. 17.] The Court will address each in turn.

**I.**
**BACKGROUND**

Dr. Michael Welsh alleges that he opened a Roth IRA account with PENSCO Trust Company, acting as custodian. [Filing No. 1-1 at 1-2.] Real estate located in Fishers, Indiana was held in the IRA beginning on October 26, 2005. [Filing No. 1-1 at 1-2.] Dr. Welsh contends PENSCO served as custodian pursuant to a 2012 Custodial Agreement, which controlled the IRA account.

On July 18, 2013, PENSCO entered into an agreement for the purchase of the real estate held in the IRA by Richards Realty, LLC. [Filing No. 1-1 at 6.] The real estate closed, and PENSCO executed a Corporate Warranty Deed on October 31, 2013. [Filing No. 1-1 at 6-7.]

On February 10, 2014, PENSCO sent a letter seeking copies of required documentation related to the real estate sale transaction to Bussell & Richards, and a copy to Dr. Welsh. [Filing No. 1-1 at 7.] On March 7, 2014, PENSCO sent another letter to Walsh, asking for the required documents and advising that it would resign as custodian of the IRA if it did not receive the information. [Filing No. 1-1 at 7.] On August 1, 2016, PENSCO sent a letter resigning as Custodian. [Filing No. 1-1 at 8.]

On June 29, 2022, Dr. Welsh filed his Complaint in Hamilton County Superior Court 2, alleging breach of contract, breach of fiduciary duties, and material misrepresentation relating to the IRA. This case was removed to the Southern District of Indiana on August 3, 2022.

The Custodial Agreement contained a provision providing for arbitration of disputes between Dr. Welsh and PENSCO. [Filing No. 1-2 at 22.] Defendants have now filed a Motion to Compel Arbitration and Stay arguing the Custodial Agreement subjects the parties to mandatory arbitration, [Filing No. 6], and a subsequent Motion to Stay Discovery, [Filing No. 14].

Originally, the Defendants requested this court stay the proceedings pending arbitration but have since argued dismissal for improper venue is the proper route and request their Motion to Compel be converted to a Motion to Dismiss. [Filing No. 13 at 4-5.]

## II.
### LEGAL STANDARD

Section 4 of the Federal Arbitration Act provides that if arbitration is proper, a "court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. *The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.*" 9 U.S.C. § 4 (emphasis added). The Seventh Circuit has concluded that "where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration."

2

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (emphasis added).

Normally, when arbitration is dictated, a court compels arbitration in that district and stays the court proceeding. 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration ... the court in which such suit is pending ... shall on application of one of the parties stay the trial of the action until such arbitration has been had ...."). But when a court is presented with a motion to compel arbitration in a *different* district, the proper action is to dismiss the complaint for improper venue under Rule 12(b)(3). See *Ferenc*, 927 F. Supp. 2d at 542 (holding that claims were subject to arbitration and converting the motion to compel into a motion to dismiss for improper venue because the contract mandated arbitration in California); *Faulkenberg*, 637 F.3d at 808 ("[A] Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when [an] arbitration clause requires arbitration outside the confines of the district court's district."); *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) ("When a complaint requesting arbitration is filed in the wrong forum, the appropriate response is for the opposing party to file a motion to dismiss, which should then be granted by the court.").

The Custodial Agreement further outlines an Arbitration provision, stating in relevant part:

> The Account Owner hereby agrees that all claims and disputes of every type and matter between the Account Owner and PENSCO Trust Company, including but not limited to claims in contract, tort, common law claims or alleged statutory violations, shall be submitted to binding arbitration pursuant to the Commercial Rules of the American Arbitration Association; when the total damages by all claimants in an Arbitration Demand exceed $75,000 the proceedings and hearings in the case shall take place only in Denver, Colorado;

***

> To the extent not preempted by federal law, Colorado law (including without limitation Colorado statutes governing arbitration proceedings) shall control during the arbitration. The Account Owner expressly waives any right he/she may have to institute or conduct litigation or arbitration in any other forum or location, or before any other body, whether individually, representatively or in another capacity. Arbitration is final and binding on the parties. An award rendered by the arbitrator(s) may be confirmed in any court having jurisdiction over the parties.

[Filing No. 1-2 at 22.]

Defendants request this Court dismiss the action based on the Arbitration provision of the Custodial Agreement. Originally, the Defendants requested this court stay the proceedings, but have since argued dismissal for improper venue is the proper route and request their Motion to Compel be converted to a Motion to Dismiss. [Filing No. 13 at 4-5.]

The Court will proceed as if it is deciding a motion to compel arbitration. If the Custodial Agreement's Arbitration provision is valid and the parties' dispute falls within its scope, the Court will convert Defendants' Motion to Compel Arbitration and Stay into a Motion to Dismiss for Improper Venue under Rule 12(b)(3).

### III.
### DISCUSSION

Federal policy favors the enforcement of private arbitration agreements. *Fields v. Howe*, 2002 WL 418011, at *1 (S.D. Ind. Mar. 14, 2002); *Brown v. Surety Fin. Serv., Inc.*, 2000 WL 528631, *1 (N.D.Ill. March 24, 2000) (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983)). Under such policy, the Federal Arbitration Act (FAA) "authorizes a district court to compel arbitration of any issue covered by a valid and enforceable arbitration agreement." *Id.* (citing 9 U.S.C. § 4). An agreement to arbitrate "must be enforced 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Hill v. Gateway* 2000, Inc., 105 F.3d 1147, 1148 (7th Cir.1997) (quoting 9 U.S.C. § 2); see also *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) ("The

4

Federal Arbitration Act, however, states that if the parties have an arbitration agreement and the asserted claims are within its scope, the motion to compel cannot be denied.")

An agreement to arbitrate is treated like any other contract. *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997). A party can be forced to arbitrate only those matters that he or she has agreed to submit to arbitration, *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005), and "[i]f there is no contract there is to be no forced arbitration." *Gibson*, 121 F.3d at 1130. In determining whether a valid arbitration agreement exists between the parties, a federal court should look to the state law that ordinarily governs formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *James*, 417 F.3d at 677.

The parties have cited to various laws in their briefing regarding which legal standard this Court should entertain for deciding whether to enforce arbitration. Although neither party conducts a choice of law analysis in their briefing, Dr. Welsh contends that the Custodial Agreement at issue calls for New Hampshire law to apply, which it believes finds the arbitration provision "is one of adhesion, is unconscionable, and should not be enforced." [Filing No. 12 at 1.] Defendants contend the Federal Arbitration Act ("FAA") and Indiana state law favors enforcing the arbitration agreement. [Filing No. 7 at 3-5.]

Dr. Welsh's reply contends that under New Hampshire law, the arbitration provision is one of adhesion, is unconscionable, and cannot be enforced. [Filing No. 12 at 1 (citing *Pittsfield Weaving Co. v. Grove Textiles*, 430 A.2d 638 (N.H. 1981)).] He contends that the bargaining power of the parties is disparate because one party is a financial institution and the other an individual. [Filing No. 12 at 1.] Further, Dr. Welsh argues he did not sign the agreement himself, it was a

unilateral agreement issued by Defendants, and he never agreed to arbitrate any disputes through manifesting consent. [Filing No. 12 at 1-2.]

      Defendants argue the Dr. Welsh cannot have it both ways—proceeding on a breach of contract claim arguing the Account Agreement is a valid contract but arguing the agreement is an unenforceable contract of adhesion. [Filing No. 13 at 1.] Defendants argue that *Pittsfield* has been negated by two subsequent cases, *AT&T Mobility, LLC v. Conception*, 563 U.S. 333, 339 (2011) and *Finn v. Ballentine Partners, LLC,* 143 A.3d 859, 870 (N.H. 2016). First, Defendants state that *AT&T* holds the FAA preempts state laws or judicial decisions that thwart the intent of the FAA. [Filing No. 13 at 2-3.] Defendants further contend that the New Hampshire Supreme Court held in *Finn* that Supreme Court precedent prohibits a trial court from refusing to enforce the parties' agreement to arbitrate. [Filing No. 13 at 3.] While this may be the case, the Supreme Court in *AT&T* noted that while the FAA favors arbitration agreements, this is so "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 346. State courts apply the FAA, which preempts conflicting state law only "to the extent that [state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress". *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476-77 (1989) (there is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy behind the FAA is simply to ensure that arbitration agreements are enforceable); *see also Finn,* 169 N.H. at 136. Regarding Defendants' final argument, it appears Dr. Welsh is not arguing the entirety of the Agreement is unenforceable, but rather just the arbitration provision. [Filing No. 12 at 2.]

      The Custodial Agreement between the parties contains a Governing Law provision, which states:

> Except to the extent governed by or subject to the requirements of the Code or other applicable federal law, or preempted by federal law, the Custodial Agreement shall be governed by and construed and administered under the laws of the State of New Hampshire, without giving effect to any state's choice of law provisions.

[Filing No. 6-1 at 11.] Because there is a dispute about the applicable law and the Custodial Agreement states that it is governed by New Hampshire law, this Court will apply New Hampshire law in analyzing the enforceability of the arbitration clause, to the extent it is not preempted by the FAA.

Parties can agree to arbitrate "gateway questions" of arbitrability. *Rent—A—Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). A delegation clause gives the arbitrator authority to decide the initial question of whether the dispute is subject to arbitration. *New Prime, Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019). The severability principle allows this court to treat a challenge to the validity of the arbitration agreement or delegation clause separately from the challenge to the validity of the entire contract. *Id.* The Arbitration provision in this case unequivocally covers "all claims and disputes of every type and matter". An arbitrator must resolve the parties' disputes unless the court finds the Arbitration provision unconscionable or otherwise invalid.

New Hampshire's arbitration statute, set out in chapter 542 of the New Hampshire Revised Statutes Annotated (N.H. RSA § 542:1 to 542:11), governs applications to stay or compel arbitration the FAA would enforce. New Hampshire courts apply the traditional principles of contract formation and interpretation to determine whether the parties have a valid arbitration agreement. See *Aetna Life*, 134 N.H. at 93; *Demers Nursing Home*, 122 N.H. at 761. In construing an arbitration provision, courts also determine the viability of contract defenses a party asserts in seeking to avoid enforcement of the arbitration agreement, including fraud and unconscionability.

See *Pittsfield*, 121 N.H. at 346-47. Once a court determines there is a valid arbitration agreement, it must determine whether the agreement covers the parties' dispute. N.H. RSA § 542:2.

The court presumes arbitrability unless it cannot discern any interpretation of the agreement that covers the dispute. See *John A. Cookson Co. v. New Hampshire Ball Bearings, Inc.*, 147 N.H. 352, 355-56 (2001). The New Hampshire arbitration statute presumptively deems any written arbitration agreement valid, enforceable, and irrevocable except where there are grounds for the revocation of any contract. If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

To be enforceable under New Hampshire law, "an agreement in writing to submit to arbitration any controversy existing at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." RSA 542:1. However, Dr. Welsh's unconscionability argument is brief and unsupported.

As the party challenging the enforceability of the Arbitration provision, Dr. Welsh bears the burden of proof. See *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 17 (1st Cir. 1999) (noting that the law imposed a "heavy burden" on those challenging the enforceability of arbitration agreements). The Arbitration provision is not—at least under the circumstances presented—an unenforceable adhesion contract. See *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).

8

The Custodial Agreement in general is not the type entered into by the average consumer. Further, Dr. Welsh has not claimed he lacked choice in whether to open an IRA account with Defendant PENSCO, or that he could not transfer custodians since the Custodial Agreement was entered into nearly ten years ago. "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Landry v. Time Warner Cable, Inc.*, 2018 WL 4697578, *4 (Dist. N.H. Sept. 27, 2018) (citing *Pittsfield*, 121 N.H. at 346).

Lastly, the arbitration provision is clearly set off from the rest of the provisions of the agreement, marked by a black line and titled with bold capital letter, and states in plain language that "all claims and disputes of every type and matter between the Account Owner and PENSCO Trust Company, including but not limited to claims in contract, tort, common law claims or alleged statutory violations, shall be submitted to binding arbitration". [Filing No. 1-2 at 22.]

As such, the Court finds the Arbitration provision in the Custodial Agreement is valid. Now, the Court must determine whether the parties' dispute falls within its scope. The Arbitration provision provides that:

> The Account Owner hereby agrees that all claims and disputes of every type and matter between the Account Owner and PENSCO Trust Company, including but not limited to claims in contract, tort, common law claims or alleged statutory violations, shall be submitted to binding arbitration pursuant to the Commercial Rules of the American Arbitration Association; when the total damages by all claimants in an Arbitration Demand exceed $75,000 the proceedings and hearings in the case shall take place only in Denver, Colorado;
>
> ***
>
> The Account Owner expressly waives any right he/she may have to institute or conduct litigation or arbitration in any other forum or location, or before any other body, whether individually, representatively or in another capacity.

[Filing No. 1-2 at 22.] The Arbitration provision is expansive, covering "all claims and disputes of every type and matter between the Account Owner and PENSCO Trust Company". [Filing No. 1-2 at 22.] There is similarly no provision excluding any specific claims from arbitration, however a monetary threshold dictates that "when the total damages by all claimants in an Arbitration Demand are $75,000 or less, the arbitration proceedings and hearings in the case shall take place only in the city with a United States District Court nearest to the residence of one r more of the Account Owner(s)." [Filing No. 1-2 at 22.] Dr. Welsh alleges claims of breach of contract, breach of fiduciary duty, and material misrepresentation relating to the IRA, with damages in the amount of no less than $3,000,000. [Filing No. 1-1.] As such, these claims fall within the broad scope of the Arbitration provision that are subject to arbitration in Colorado.

The Court will not, however, grant the Defendants' original request to compel arbitration. Given that if the Court were to grant the motion to compel, it would be compelling arbitration in a district other than the Southern District of Indiana, an action prohibited by Section 4 of the FAA. As the Court noted above, when a motion to compel asks a district court to compel arbitration in another district other than its own, the proper procedure is to dismiss for improper venue. *Faulkenberg*, 637 F.3d at 808.

### IV.
#### CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiffs' claims are subject to arbitration in Colorado. The Court converts Defendants' Motion to Compel Arbitration and Stay, [Filing No. 6], into a Motion to Dismiss for Improper Venue under Rule 12(b)(3) and **GRANTS** this motion. The Court **ORDERS** that this case is **DISMISSED without prejudice** and will enter judgment accordingly. All pending motions are **DENIED as moot.**

Date: 9/30/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution to all counsel of record via ECF.**